[No. S070514. May 27, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
NORTON HERING et al., Defendants and Appellants.

## COUNSEL

Law Offices of Dennis A. Fischer, Dennis A. Fischer and John M. Bishop for Defendant and Appellant Norton Hering.

Keith C. Monroe and Roger S. Hanson for Defendant and Appellant Jose Fermin.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Meagan J. Beale, Carl H. Horst, Laura W. Halgren and Frederick B. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—In this case we must determine whether Business and Professions Code section 650 and Insurance Code section 750 require instruction on specific intent. In the abstract, both may be characterized as specific intent crimes because in certain circumstances their commission contemplates an intention to bring about future acts. Nevertheless, the conduct proscribed in the statutory definition fully incorporates the requisite mental state. We therefore decline to impose any additional instructional obligation on the trial court, unless the defendant has proffered a mental state defense.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendants Norton Hering, M.D., and Jose Fermin were convicted of violating Business and Professions Code section 650 and Insurance Code section 750 by offering rebates on medical fees as inducement for the referral of patients. The charges arose from an undercover investigation by the Orange County District Attorney's office into illegal activity by medical clinics and attorneys primarily specializing in personal injury cases. As part of this operation, district attorney investigator Frank Lopez posed as Frank Rios, the administrator of a fictitious law firm.

In April 1992, Lopez mailed a letter of introduction to the Jefferson Medical Group, owned and directed by defendant Hering, seeking a meeting to discuss the possibility of developing a working relationship. In response, defendant Fermin, the administrator of the Jefferson Medical Group, met with Lopez at the ostensible law office. Their conversation was videotaped and audio tape-recorded. During that conversation, Lopez inquired whether "if we're referring people to you, do you do any kind of a reimbursement to us for the referrals or do you wait." Fermin commented that kickbacks were illegal, but later stated, "we can give 15 to 20% of the bill." Although he indicated he would first have to speak with Hering, he generally confirmed, "We'll do something if we are going to be in business."

About two months later, Lopez met with both Fermin and Hering at the medical group office and audiotaped the conversation. Lopez asked Hering "what kind of arrangement" he normally had with attorneys. Hering responded that "20% is deducted at the end of our bill when the case is settled." For example, "let's assume that we have a three or four thousand dollar bill and the case settled for fifteen. And therefore we expect our bill to be paid, normally we ask you to deduct 20% at the end of that bill. . . . [¶] And then just send us the difference."

In his defense, Hering testified he had been tricked or "led" into the conversation by Lopez. He further stated the 20 percent discount to be applied at the end of the case was to facilitate settlement of patients' claims and only intended to secure prompt payment. He denied offering to discount any medical bills as consideration or inducement for the referral of other patients.

Dennis Duarte, an attorney specializing in personal injury cases, also testified for the defense as an expert witness. He explained that it is customary for a medical care provider to discount the bill to allow for settlement of related litigation, particularly when the settlement may not be sufficient to cover all costs. However, he acknowledged he had never negotiated the amount of a discount in advance of treatment.

Both defendants requested the trial court to instruct that the crimes required the specific intent "that the one receiving the consideration will, in the future, refer clients, patients or customers." The court declined to so instruct and directed the jury only as to general criminal intent, i.e., that the defendant "does that which the law declares to be a crime . . . even though

he may not know that his act or conduct is unlawful."[1] Substantively, the court instructed according to the statutory definition of each offense.[2]

The Court of Appeal reversed the convictions. Analogizing to the crime of solicitation (Pen. Code, § 653f), the court held that as to both charges "the words [offering a discount or rebate must] be uttered with the intent to actually commit the act of paying a rebate." Therefore, they required an instruction on specific intent. We granted the Attorney General's petition for review.

## Discussion

Business and Professions Code section 650, prohibiting what is commonly referred to as fee splitting, provides in part that "the offer, delivery, receipt, or acceptance by any person licensed under this division of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person, irrespective of any membership, proprietary interest or coownership in or with any person to whom these patients, clients or customers are referred is unlawful."[3] In similar terms, Insurance Code section 750 provides in part that "any person acting individually or through his or her employees or agents, who engages in the practice of processing, presenting, or negotiating claims, including claims under policies of insurance, and who offers, delivers, receives, or accepts any rebate, refund, commission, or other consideration, whether in the form of money or otherwise, as compensation or

---

[1]On the charge of violating Business and Professions Code section 650, defendant Fermin was prosecuted as an aider and abettor. The trial court properly instructed that as to him violation required the specific "intent or purpose of committing, encouraging, or facilitating the commission of the crime . . . ." (See *People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].)

[2]With respect to Business and Professions Code section 650, the court instructed: "The offer, delivery, receipt or acceptance by a physician of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients or customers to any person is . . . a violation of Section 650 of the Business & Professions Code, a crime. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. An offer, delivery, receipt or acceptance of consideration to any person. [¶] 2. by a physician, and [¶] 3. as compensation or inducement for referral of patients, clients or customers."

With respect to Insurance Code section 750, the court instructed: "Any person, acting individually or through his or her employees or agents, who engages in the practice of processing, presenting, or negotiating claims, including claims under policies of insurance, and who offers, delivers, receives or accepts any rebate, refund, commission or otherwise as compensation or inducement to or from any person for the referral or procurement of clients, cases, patients, or customers is guilty of a violation of Section 750 of the Insurance Code, a crime."

[3]The parties agree defendant Hering is a "person licensed under this division . . . ."

inducement to or from any person for the referral or procurement of clients, cases, patients, or customers, is guilty of a crime." (Ins. Code, § 750, subd. (a).)

On review, defendant Fermin endorses the construction of the Court of Appeal that these statutes require an intention "to actually commit the act of paying a rebate." Somewhat more circumspectly, defendant Hering advocates that the intent is "to induce the referral" of patients. The Attorney General argues the crimes require no particular mental state beyond the intent to commit the proscribed acts.

As explained in a now familiar passage from *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370] (*Hood*): "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent. There is no real difference, however, only a linguistic one, between an intent to do an act already performed and an intent to do the same act in the future."

"The distinction between specific and general intent crimes evolved as a judicial response to the problem of the intoxicated offender" and the availability of voluntary intoxication as a defense. (*Hood, supra,* 1 Cal.3d at p. 455; see *People* v. *Whitfield* (1994) 7 Cal.4th 437 [27 Cal.Rptr.2d 858, 868 P.2d 272]; Pen. Code, § 22, subd. (b); see also *id.,* § 28, subd. (a) [evidence of mental disease, mental defect, or mental disorder admissible as defense to specific intent crime].) Outside this context, the terms "have been notoriously difficult . . . to define and apply" (*Hood, supra,* 1 Cal.3d at p. 456) and even perhaps "have proved to be mischievous." (*People* v. *Cain* (1995) 10 Cal.4th 1, 84 [40 Cal.Rptr.2d 481, 892 P.2d 1224] (conc. opn. of Mosk, J.); see Perkins on Criminal Law (2d ed. 1969) ch. 7, § 1, p. 751.) In any event, courts should avoid rote application. As we noted in *Hood*, "assault is appropriately characterized as a specific intent crime under [the definition of an intention to do a future act or achieve a particular result]. An assault, however, is equally well characterized as a general intent crime under the definition of general intent as an intent merely to do a violent act." (*Hood, supra,* 1 Cal.3d at pp. 457-458.)

Our analysis must therefore begin with an examination of the statutory language describing the proscribed conduct, including any express or implied reference to a mental state. As relevant here, Business and

Professions Code section 650 and Insurance Code section 750 in essence prohibit the offering of "any rebate . . . or other consideration . . . as . . . inducement" for referring patients. With respect to the offender's state of mind, the gravamen of each crime is the motivation for the rebate: to induce referrals. (See 73 Ops.Cal.Atty.Gen. 321, 323 (1990); 63 Ops.Cal.Atty.Gen. 89, 91-93 (1980).) Contrary to the conclusion of the Court of Appeal, whether the offeror actually intends eventual payment is of no moment; only the character of the offer controls. (Cf. *People* v. *Daniels* (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232] [statutory definition for sale of restricted drug "focuses on the act of the sale itself"].) For this reason, a defendant who uttered such words as part of a theatrical performance or as a joke would not be guilty because the circumstances of the utterance would demonstrate it was not *"as . . . inducement . . . for"* referring patients. (Bus. & Prof. Code, § 650, italics added; Ins. Code, § 750, subd. (a), italics added; cf. Bus. & Prof. Code, § 657 [discount permissible to encourage prompt payment of medical claims by third party payors]; 63 Ops.Cal.Atty.Gen., *supra*, at p. 93 ["possible that the motivation for providing [professional courtesy] service[] may be completely unrelated to the exchange of consideration for, or an inducement for, patient referrals" and therefore not violative of Business and Professions Code section 650].)

Whether these offenses require some other specific intent is a closer question. Neither includes language typically denoting specific intent crimes, such as "with the intent" or "for the purpose of." (See, e.g., Pen. Code, §§ 653f, subd. (a) [solicitation must be made "with the intent that the crime [solicited] be committed"], 653.22, subd. (a) [loitering unlawful if done "with the intent to commit prostitution"], 289, subd. (a)(1) [penetration by foreign object must be "for the purpose of sexual arousal, gratification, or abuse"], 499b [taking of automobile must be "for the purpose of temporarily using or operating the same"].) Nevertheless, to offer some form of consideration as inducement for referrals does connote an "intent to . . . achieve some additional consequence." (*Hood, supra*, 1 Cal.3d at p. 457.) To "induce" may mean "to lead on to some action, condition, belief, etc.; prevail on; persuade" or "to bring on; bring about, cause, effect." (Webster's New World Dict. (3d college ed. 1988) p. 689.) Under either definition, Business and Professions Code section 650 and Insurance Code section 750 can be read to require a finding that the defendant made the offer of a rebate for the purpose of inducing the referral of patients. Thus, if constrained to do so, we would denominate them specific intent crimes. (See, e.g., *People* v. *Lyons* (1991) 235 Cal.App.3d 1456, 1460 [1 Cal.Rptr.2d 763].)

Such classification is, however, necessary only when the court must determine whether a defense of voluntary intoxication or mental disease,

defect, or disorder is available; whether evidence thereon is admissible; or whether appropriate jury instructions are thereby required. (See, e.g., *People* v. *Mendoza* (1998) 18 Cal.4th 1114, 1126-1133 [77 Cal.Rptr.2d 428, 959 P.2d 735].) In this case, neither defendant asserts any such claim. Each simply contends that in addition to instructions that tracked the statutory language, the trial court should have included one on specific intent. We are unpersuaded. This case aptly illustrates the general principle that—other than circumstances involving a mental state defense—"the characterization of a crime as one of specific intent [or general intent] has little meaningful significance in instructing a jury. The critical issue is the accurate descrip- tion of the state of mind required for the particular crime." (*People* v. *Faubus* (1975) 48 Cal.App.3d 1, 5 [121 Cal.Rptr. 167]; *People* v. *Estrada* (1995) 11 Cal.4th 568, 574 [46 Cal.Rptr.2d 586, 904 P.2d 1197].)

"Inducement" is "anything that induces." (Webster's New World Dict., *supra*, at p. 689.) Without being unavoidably tautological, one could not make an offer as inducement without intending to induce, i.e., the proscribed conduct incorporates the requisite culpable state of mind. (Cf. *People* v. *Colantuono* (1994) 7 Cal.4th 206, 217 [26 Cal.Rptr.2d 908, 865 P.2d 704] ["If one commits [an assault, i.e.,] an act that by its nature will likely result in physical force on another, the particular intention of committing a battery is thereby subsumed."].) The difference between making an offer "as induce- ment for referrals" and making it "with the specific intent to induce refer- rals" is semantical at best and legally insignificant.[4] Indeed, any amplifica- tion on the terms of the statutes may have been confusing as well as redundant. As Professor Perkins puts it: "Intent includes those consequences which . . . represent the very purpose for which an act is done . . . ." (Perkins on Criminal Law, *supra*, at p. 747.)

We also find no prejudice in giving the general intent instruction, which states that "[w]hen a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent . . . ." (CALJIC No. 3.30.) With respect to Business and Professions Code section 650 and Insurance Code section 750, that which the law declares to be a crime is offering "any . . . consideration . . . as . . . inducement" for referring patients, i.e., making such an offer for the purpose of inducing referrals. The jury thus could not have been misled.

---

[4]Contrary to the implication of defendant Hering, this conclusion does not foreclose the jury from considering a defense that the objective in offering a rebate was lawful. (See, e.g., Bus. & Prof. Code, § 657.) Under the statutory definition of Business and Professions Code section 650, the jury must find the offer was made as inducement for referrals. (See *ante*, fn. 2.) To do so, it must reject any proffered defense of legitimate purpose.

## CONCLUSION

The trial court did not prejudicially err by instructing the jury in accordance with the statutory definitions of Business and Professions Code section 650 and Insurance Code section 750 and refusing to instruct that either offense requires a specific intent. Accordingly, we reverse the judgment of the Court of Appeal. Since the Court of Appeal did not address other issues raised by defendants, we remand for further proceedings consistent with this opinion.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.