BILL LOCKYER Attorney General ANTHONY S. Da VIGO Deputy Attorney General
THE HONORABLE SCOTT WILDMAN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:
May a corporation licensed as a health care service plan enter into an agreement with providers of audiological services, a specialty not covered by the plan, pursuant to which the corporation will refer its enrollees to licensed audiologists who agree to furnish free audiological evaluations and discounted rates for hearing aids to any enrollees of the plan?
 CONCLUSION
A corporation licensed as a health care service plan may enter into an agreement with providers of audiological services, a specialty not covered by the plan, pursuant to which the corporation will refer its enrollees to licensed audiologists who agree to furnish free audiological evaluations and discounted rates for hearing aids to any enrollees of the plan.
 ANALYSIS
A corporation licensed by the Department of Corporations ("Department") as a health care service plan under the Knox-Keene Health Care Service Plan Act of 1975 (Health Saf. Code, § 1340 et seq.; "Act")[1] offers a variety of full service and specialized health care service contracts.[2] The corporation proposes to enter into an agreement with providers of audiological services pursuant to which the corporation would refer its enrollees to licensed audiologists for free audiological evaluations and discounted rates for hearing aids. The corporation would not be prohibited from referring its enrollees to other audiologists who do not enter an arrangement with it. The question presented for resolution is whether the proposed agreement would violate California law. We conclude that it would not.
Preliminarily, we note that the audiological services in question are not covered by any of the corporation's health benefit plans licensed by the Department. Section 1367, subdivision (i), requires that each health care service plan contract shall provide to subscribers and enrollees all of the basic health care services, except as, for good cause, may be exempted by the Commissioner of Corporations. The term "basic health care services" is defined in section1345, subdivision (b), and does not include audiological services. Section 10:1300.67 of title 10 of the California Code of Regulations, part of the Department's implementing regulations, provides in part:
 "The basic health care services required to be provided by a health care service plan to its enrollees shall include . . .
 "(a) Physician services, which shall be provided by physicians licensed to practice medicine or osteopathy in accordance with applicable California law. There shall also be provided consultation with and referral by physicians to other physicians.
 "(1) The plan may also include, when provided by the plan, consultation and referral (physician or, if permitted by law, patient initiated) to other health professionals who are defined as dentists, nurses, podiatrists, optometrists, physicians's assistants, clinical psychologists, social workers, pharmacists, nutritionists, occupational therapists, physical therapists and other professionals engaged in the delivery of health services who are licensed to practice, are certified, or practice under authority of the plan, a medical group, or individual practice association or other authority authorized by applicable California law."
In determining whether the proposed program would be prohibited under California law, we must necessarily examine the provisions of section650 of the Business and Professions Code,[3] which provides in pertinent part:
 ". . . [T]he offer . . . by any person licensed under this division of any . . . discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person . . . is unlawful."
An audiologist is a person "licensed under this division." (§§2530-2539.) Consequently, section650 prohibits the offering of any discount by an audiologist as inducement for the referral of patients. Here, the offer of a discount would be made to the enrollees of the corporation's plans rather than to the corporation itself. In such circumstances, may the discount be deemed a proscribed "consideration" given as an "inducement" for the referring of patients by the corporation?
As noted in 77 Ops.Cal.Atty.Gen. 143, 144 (1994), the Legislature enacted section 650 to protect the public from excessive health care costs (Mason v. Hosta (1984) 152 Cal.App.3d 980, 986) and to prevent referrals based on considerations other than the best interests of the patients (Magan Medical Clinic v. Cal. State Bd. of Medical Examiners (1967) 249 Cal.App.2d 124, 132; 68 Ops.Cal.Atty.Gen. 28, 31 (1985)), deceit and fraud (63 Ops.Cal.Atty.Gen. 89, 91 (1980)), and payment to a licensee where professional services have not been rendered (65 Ops.Cal.Atty.Gen. 252, 253 (1982)).
We believe the present inquiry is governed by the principles recently set forth in People v. Duz-Mor Diagnostic Laboratory, Inc. (1998)68 Cal.App.4th 654. In Duz-Mor, the court concluded that it was not a violation of section 650 for a licensed clinical laboratory to provide discounts for services rendered to the patients of doctors who had contracted with the laboratory to provide discounts for their patients. The court found that the discounts were not paid to the doctors, the discounts did not provide an inducement for the doctors to make the referrals, and in fact the discounts provided a financial benefit to the patients of the doctors. (Id., at pp. 662-663.) The court reasoned:
 "Here, patients, not doctors, received the discount. There was no evidence that Duz-Mor offered any discount, remuneration, or any other benefit to a doctor as compensation or an inducement for referring patients.
 "Appellant speculates that by offering low laboratory fees for private-pay patients, physicians were able to obtain more such patients and were thus remunerated. . . . [T]here was no evidence that private-pay patients choose their doctors based on the price of lab fees, or that any doctor who negotiated discounts found private-patients particularly lucrative.
 "We noted that the Department has in the past agreed with this analysis. In 1982, the Department issued a document titled `Guidelines for Laboratory Management,' which had the announced purpose of clarifying the Department's position on Business and Professions Code section 650 The document summarized a number of Attorney General opinions, and concluded that discounts were not unlawful as long as they were passed on to patients and were not based on the referral of a given volume of business. Appellant's investigator, Raymond Chang, testified that the discounts here were not conditioned on the referral of a given volume of business." (Id., at p. 664.)
Among the Attorney General opinions referenced in Duz-Mor is a 1978 letter opinion (Cal. Atty. Gen., Indexed Letter, No. IL 78-112 (Aug. 14, 1978)), in which we stated:
 "Certainly section 650 was not intended to prevent any and all discounts by the person accepting the referral. For example, if [a] pharmacy offers discounts to senior citizens, it is doubtful that the Legislature intended to make it illegal for a physician to recommend that his elderly patient[s] patronize that store. In this case, the economic benefit is passed on to the patient. The problems of secret payments and hidden, increased costs to the consumer are avoided. Furthermore, since the economic benefit accrues only to the patient referred, it is unlikely that concerns other than the patient's best interests would affect the referral. While the person making the referral may indirectly benefit from the discount in that he may develop a reputation for helping to keep his patients' costs down, we do not believe the Legislature intended section 650 to be used to prohibit such a result.
 "It then appears that section 650
is intended not only to prevent increased costs to the consumer caused by the payoffs for referrals, but also to prevent referrals that might not be entirely related to the patient's health care needs. These two considerations are reflected by the language in the statute which limits its prohibition to discounts which compensate or induce the referral.
 "Thus, we conclude it is only discounts which compensate the person making the referral or which induce him to make the referral for reasons unrelated to the health care needs of his patient which are prohibited by section 650."
In the corporation's proposed arrangement here, the audiologists would be offering free services and discounts to the corporation's enrollees, not to the corporation. The free services and discounts would not be conditioned upon the referral of a given volume of business. The corporation would not be prohibited from referring its enrollees to any particular audiologists, including those who have not entered into an agreement to provide free services and discounts. Speculation that the free services and discounts might result in more enrollees for the corporation's plans is insufficient, without more, to find a violation of section 650. The corporation will not be relinquishing its right to refer its enrollees to audiologists based solely upon the best interests of the enrollees.
In contrast, we note that in 82 Ops.Cal.Atty.Gen. 1 (1999), we found a violation of section 650, where the corporation proposing to refer its enrollees for discounted services was to receive an "administrative fee" based upon the services rendered to the enrollees. The potential for abuse in such an arrangement is readily apparent. The corporation would have a direct financial interest in referring its enrollees so that it could earn fees based upon the services performed. Such referrals could be induced by considerations other than the best interests of the enrollees — precisely what section650 was intended to prevent. (See People v. Hering (1999) 20 Cal.4th 440, 444-448; Beck v. American Health Group Internat., Inc. (1989) 211 Cal.App.3d 1555, 1564.)
We conclude that a corporation licensed as a health care service plan may enter into an agreement with providers of audiological services, a specialty not covered by the plan, pursuant to which the corporation will refer its enrollees to licensed audiologists who agree to furnish free audiological evaluations and discounted rates for hearing aids to any enrollees of the plan.
[1] Unidentified section references herein prior to footnote 3 are to the Health and Safety Code.
[2] The present inquiry does not pertain to any plan the regulation of which is preempted by federal law such as the Employee Retirement Income Security Act (29 U.S.C. § 1144; see Hewlett-Packard Co. v. Barnes (9th Cir. 1978) 571 F.2d 502). Nor do we consider herein any plans for enrollees who are covered by the Medi-Cal program (Welf. Inst. Code, §§ 14000-14640). (See Welf. 
Inst. Code, § 14107.2; People v. Palma (1995)40 Cal.App.4th 1559.)
[3] Hereinafter, unidentified section references are to the Business and Professions Code.