*212 BROWN, J., Concurring.
I agree with the majority’s conclusion that Penal Code section 529, paragraph 3,[1] does not require “an intent to subject the impersonated individual to liability for suit or prosecution, or to secure a benefit for any person.” (Maj. opn., ante, at p. 202.) I also concur with its disposition. The majority, however, does not adequately define the mental state required for the crime of false personation and, in failing to do so, further obfuscates the standards for determining the mental element of a crime. I therefore write separately to clarify the mental state required for the crime of false personation. In the process, I reject the specific intent/general intent framework and propose an alternative approach.
I.
The concepts of specific and general intent “ ‘evolved as a judicial response to the problem of the intoxicated offender’ and the availability of voluntary intoxication as a defense.” {People v. Hering (1999) 20 Cal.4th 440, 445 [84 Cal.Rptr.2d 839, 976 P.2d 210] (Hering), quoting People v. Hood (1969) 1 Cal.3d 444, 455 [82 Cal.Rptr. 618, 462 P.2d 370] (Hood).) In Hood, supra, 1 Cal.3d at pages 456-457, we formulated the standard definitions of specific and general intent now cited in many a judicial opinion in California: “When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant’s intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent. There is no real difference, however, only a linguistic one, between an intent to do an act already performed and an intent to do that same act in the future.”
Since Hood, courts and litigants, when determining the mental element of a crime, invariably attempt to classify the crime as a specific or general intent crime. They have done so even though the terms “have been notoriously difficult... to define and apply . . . .” {Hood, supra, 1 Cal.3d at p. 456.) Not surprisingly, the concepts of specific and general intent have “proved to be mischievous.” (People v. Cain (1995) 10 Cal.4th 1, 84 [40 Cal.Rptr.2d 481, 892 P.2d 1224] (cone. opn. of Mosk, J.).)
Indeed, the concept of general intent has been especially problematic because California law recognizes more than one criminal mental state other than an “intent to do some further act or achieve some additional consequence.” {Hood, supra, 1 Cal.3d at p. 457.) For example, a crime in *213 California may also require: (1) knowledge or actual knowledge of “the facts . . . [that] bring the act or omission within the provisions of’ the Penal Code (§ 7, par. 5); (2) criminal negligence or “aggravated or reckless” conduct showing an “indifference to the consequences” {People v. Peabody (1975) 46 Cal.App.3d 43, 47 [119 Cal.Rptr. 780]); or (3) a form of negligence where the defendant knows or should have known the facts that make the act or omission unlawful. {In re Jorge M. (2000) 23 Cal.4th 866, 887-888, fn. 11 [98 Cal.Rptr.2d 466, 4 P.3d 297].) General intent or the intent to do the proscribed act, however, does not distinguish among the mental states of knowledge, criminal negligence and negligence. As a result, our courts have struggled to consistently define the mental element of so-called general intent crimes, with little success. This struggle has, in turn, confused prosecutors and defendants alike.[2]
We have recently recognized the mischief created by our reliance on the concepts of specific and general intent and cautioned against their “rote application.” {Hering, supra, 20 Cal.4th at p. 445.) The majority reiterates this admonition. (See maj. opn., ante, at p. 205.) I would go further. Rather than tepidly caution courts against classifying offenses as specific or general intent crimes, I would eschew any use of these concepts except where “the court must determine whether a defense of voluntary intoxication or mental disease, defect, or disorder is available” as a policy matter. {Hering, supra, at pp. 446-447.)
Rejecting the specific intent/general intent framework does not, however, end our task. We must still determine the mental state necessary for the crime of false personation. To do so, we must develop a new framework for describing the mental element of a crime.
Unfortunately, the majority fails to do so. Rather than clearly define the mental element of false personation through the application of ascertainable standards, the majority offers a cryptic definition that appears to conflict with its own analysis and our case law. In doing so, the majority not only obscures the mental element of false personation, but also adds to the confusion of lower courts that must interpret our decision today.
For example, the majority “suggest[s]” that false personation “requires a deliberate effort to pass oneself off as another” (maj. opn., ante, at p. 208), *214 and states that a person guilty of false personation “must intentionally engage in a deception.” (Maj. opn., ante, at p. 209.) Yet, the majority also suggests that the statutory language adequately conveys this intent to a jury (see maj. opn., ante, at p. 207), even though the statutory phrase, “falsely personates” (§ 529), does not have “a plain, unambiguous meaning.” (People v. Mayfield (1997) 14 Cal.4th 668, 773 [60 Cal.Rptr.2d 1, 928 P.2d 485] (Mayfield) [must define a statutory term for the jury if the meaning of the term is not plain and unambiguous].) Indeed, the word “false” has many meanings, including “intentionally untrue,” “not true,” and “inconsistent with the facts,”—and does not necessarily imply an intent to mislead. (Webster’s Collegiate Dict. (10th ed. 1993) p. 419; see also Washer v. Bank of America (1943) 21 Cal.2d 822, 828 [136 P.2d 297, 155 A.L.R. 1338] [“falsify” has at least three meanings: (1) “mistakenly and accidentally untrue,” (2) “an intentional untruth, without, however, an intent to defraud,” or (3) “intentionally or knowingly untrue, made with intent to defraud”], disapproved on other grounds by MacLeod v. Tribune Publishing Co. (1959) 52 Cal.2d 536, 551 [343 P.2d 36]; Brown v. State Department of Health (1978) 86 Cal.App.3d 548, 556 [150 Cal.Rptr. 344] [in the context of Bus. & Prof. Code, § 2411, the phrase “ ‘falsely represents’ ” does not “require[] a finding of intent to deceive”].)
The majority also concedes that section 529, paragraph 3 requires an act “that might result in a liability or a benefit.” (Maj. opn., ante, at p. 206.) It, however, construes the Legislature’s silence as to the mental element for this act as an intent “to punish all acts by an impersonator that might result in a liability or a benefit, whether or not such a consequence was intended or even foreseen.” (Ibid., italics added.) By removing “the requirement of a ‘guilty mind’ with respect to [the benefit/detriment] element of [the] crime,” the majority, in effect, makes false personation a strict liability offense. (Staples v. United States (1994) 511 U.S. 600, 607-608, fn. 3 [114 S.Ct. 1793, 1798, 128 L.Ed.2d 608].) Because false personation is not a “public welfare” offense (maj. opn., ante, at p. 209), such an interpretation violates section 20 and the well-established rule against imposing strict liability in criminal actions. (See People v. Simon (1995) 9 Cal.4th 493, 521 [37 Cal.Rptr.2d 278, 886 P.2d 1271] (Simon) [only public welfare offenses need not require “some type of criminal intent or negligence” in addition to the criminal act].)
Rather than compound the confusion, I propose the following two-step approach for determining the mental element of a crime: (1) identify each act or omission proscribed by statute; and (2) determine the mental state for each such act or omission. This approach flows directly from the language of section 20, which provides that: “In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.” *215 Because section 20 is “an invariable element of every crime unless excluded expressly or by necessary implication” {People v. Vogel (1956) 46 Cal.2d 798, 801 [299 P.2d 850], fn. omitted), “[t]he scienter for any crime is inextricably linked to the proscribed act or omission.” {People v. Sargent (1999) 19 Cal.4th 1206, 1222 [81 Cal.Rptr.2d 835, 970 P.2d 409] {Sargent).)
In the first step, we identify each act or omission proscribed by the statute. In doing so, we omit matters extrinsic to that act or omission, including the particular context or circumstances in which the statute applies. (See Sargent, supra, 19 Cal.4th at p. 1223.)
After completing the first step, we then determine the mental state attached to each act or omission. (See § 20.) All crimes in California “are statutory and there are no common law crimes.” {In re Brown (1973) 9 Cal.3d 612, 624 [108 Cal.Rptr. 465, 510 P.2d 1017].) Thus, we first look to the statutory language. Where the statutory language states the crime’s mental element, we simply follow the Legislature’s lead. For example, a criminal statute may expressly define the requisite mental state as; (1) an intent to do some further act or achieve some further consequence (see, e.g., §§ 653f, subd. (a) [solicitation must be made “with the intent that the crime [solicited] be committed” (italics added)], 289, subd. (k)(l) [“ ‘[s]exual penetration’ ” must be “for the purpose of sexual arousal, gratification, or abuse” (italics added)]); (2) knowledge (see, e.g., § 308, subd. (a) [making it unlawful to “knowingly” sell, give or furnish tobacco products to a person under the age of 18 years (italics added)]); (3) criminal negligence (see, e.g., § 191.5, subd. (a) [gross vehicular manslaughter while intoxicated requires “the commission of an unlawful act . . . with gross negligence” (italics added)]); or (4) negligence (see, e.g., § 836.6, subds. (b), (c) [making it unlawful to escape arrest by force or violence if the person “knows, or by the exercise of reasonable care should have known, that he or she has been so arrested” (italics added)]).
Of course, the second step is rarely so simple because the Legislature is often silent as to the mental element of a crime. In such cases, we must search elsewhere for guidance. Where the Legislature’s intent is not clear from the statute or legislative history, we typically look to the nature of the proscribed acts or omissions in order to ascertain the mental state necessary for the offense.
As a general rule, “some type of criminal intent or negligence is a necessary element of a criminal offense.” {Simon, supra, 9 Cal.4th at p. 521.) Thus, most criminal offenses, at a minimum, require a mental state of criminal negligence. (See People v. Martin (1989) 211 Cal.App.3d 699, *216 712-713 [259 Cal.Rptr. 770, 86 A.L.R.4th 383] (Martin).) We have, however, created an exception to this general rule for “regulatory or malum prohibitum crimes . . . where the purpose is to protect public health and safety and the penalties are relatively light.” (Simon, supra, 9 Cal.4th at p. 521.) Such offenses “ ‘are punishable despite the absence of any criminal intent or criminal negligence.’ ” (Martin, supra, 211 Cal.App.3d at p. 713.)
Thus, if the proscribed act or omission is akin to a violation of a regulation designed to protect the public from widespread injury, then we may construe the Legislature’s silence as an intent to impose strict liability (see Simon, supra, 9 Cal.4th at p. 521 [identifying several strict liability offenses]) or a form of negligence (see In re Jorge M., supra, 23 Cal.4th at pp. 887-888, fn. 11 [requiring “proof of a mental state slightly lower than ordinarily required for criminal liability”]). If not, then we must adhere to section 20 and require at least knowledge or criminal negligence. (See Martin, supra, 211 Cal.App.3d at pp. 712-713.)
In those cases where legislative silence requires us to choose between knowledge and criminal negligence, we focus on the nature of the proscribed acts or omissions. If the statute criminalizes traditionally lawful conduct, the requisite mental state should be knowledge. (See, e.g., People v. Rubalcava (2000) 23 Cal.4th 322, 331-332 [96 Cal.Rptr.2d 735, 1 P.3d 52] [construing “the statute to contain a ‘knowledge’ element”]; People v. Coria (1999) 21 Cal.4th 868, 880 [89 Cal.Rptr.2d 650, 985 P.2d 970] (Coria) [“the defendant must have knowledge of the facts which make the chemical synthesis unlawful”].) In other words, the guilty party must have actual knowledge of the facts that makes his or her act or omission unlawful. (§ 7, par. 5.) Otherwise, the mental state attached to the proscribed act or omission should be criminal negligence. (See Simon, supra, 9 Cal.4th at p. 522 [requiring proof of “knowledge or criminal negligence”].) In other words, the guilty party must act in an “ ‘aggravated, culpable, gross, or reckless’ ” manner even though he had “ ‘actual or imputed’ ” knowledge of the facts that makes his act or omission unlawful. (People v. Penny (1955) 44 Cal.2d 861, 879-880 [285 P.2d 926].)
II.
I now apply this framework to the crime of false personation codified in section 529, paragraph 3. As written, the statute proscribes two acts: (1) “falsely person[ating] another in either his private or official capacity”; and (2) an “act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit *217 might accrue to the party personating, or to any other person . . . (Ibid.) Both acts are necessary to establish guilt.
As to the first proscribed act, the phrase “falsely personate,” as understood at the time of the enactment of section. 529, defines the mental state attached to the act as an intent to mislead others into believing that defendant is the impersonated individual. This phrase, as I noted earlier, is neither clear nor unambiguous in modem times. Our early decisions interpreting the statute (see People v. Maurin (1888) 77 Cal. 436, 439 [19 P. 832] [reversing a conviction under § 529 because there was no evidence defendant “pretended to any human being that he” was another]), and similar language in other statutes (see, e.g., People v. Sprague (1879) 53 Cal. 491, 494 [the word “false” as used in Code Civ. Proc., former § 2061, means “untrue, not as the result of mistake or inadvertence, but willfully and with design to deceive”]), however, indicate that no such confusion existed at the time of the enactment of section 529 and establish the intent to mislead as an element of the offense. Such a conclusion is further bolstered by the 19th-century definition of “false.” (See 1 Bouvier’s Law Dict. (1897 ed.) p. 755 [“Applied to the intentional act of a responsible being, the word “false” “implies a purpose to deceive . . . .”].) Indeed, the majority acknowledges that these 19th century sources “strongly suggest” that a defendant guilty of false of personation must have an intent to mislead. (See maj. opn., ante, at p. 208.)[3]
With respect to the second proscribed act, the Legislature is silent as to the requisite mental state. Instead, the statute merely proscribes an act that either creates liability for the impersonated individual or provides a benefit to another. (§ 529, par. 3.) Because the crime of false personation is not regulatory in nature (see Simon, supra, 9 Cal.4th at p. 521) and does not criminalize traditionally lawful conduct (see Coria, supra, 21 Cal.4th at p. 880), the mental state attached to the second proscribed act should be criminal negligence. Thus, a defendant is only guilty of false personation “ ‘[i]f a reasonable person in defendant’s position would have been aware of ” the possibility that his act might create a liability or provide a benefit. (Williams v. Garcetti (1993) 5 Cal.4th 561, 574 [20 Cal.Rptr.2d 341, 853 P.2d 507], italics omitted, quoting People v. Watson (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279].)
Synthesizing these proscribed acts and their attached mental states, I would find that the crime of false personation has the following elements. *218 First, a defendant must impersonate another individual with the intent to deceive others into believing he is the impersonated individual. Second, a defendant must be criminally negligent in doing an act that might impose liability on the impersonated individual or provide a benefit to another.
III.
Although my interpretation of the mental element of false personation differs from the majority’s, the difference does not benefit defendant. At trial, defendant admitted that “he intended to pass himself off as [Chris] Laughrey in order to cash the check” for Cherise Hartley. (Maj. opn., ante, at p. 203.) In doing so, defendant admitted the very elements of the offense I described above. Specifically, he (1) assumed the identity of another individual with the intent to mislead others as to his true identity, and (2) knew that his act might benefit another person.
In any event, defendant’s proposed interpretation is unavailing. Even if, as defendant contends, the crime of false personation requires an intent to create a liability or provide a benefit, defendant still cannot prevail because he admitted that he intended to benefit Hartley. Accordingly, any error is harmless beyond a reasonable doubt, and I would affirm his conviction. (See People v. Flood (1998) 18 Cal.4th 470, 504 [76 Cal.Rptr.2d 180, 957 P.2d 869].)

All further statutory references are to the Penal Code unless otherwise stated.

Indeed, oral argument proved instructive in this regard. During argument, the deputy attorney general, on several occasions, stated that the crime of false personation was a general intent crime that required an intent to mislead. She, however, found it difficult, if not impossible, to conflate the concept of general intent with an intent to mislead. Indeed, she made several aborted attempts to reconcile these concepts with no success. Of course, the deputy attorney general can hardly be faulted for her inability to resolve a conundrum of our own making.

Although the majority appears to reach the same conclusion (see maj. opn., ante, at pp. 208-209), its analysis does not seem to be internally consistent. By implicitly approving the trial court’s instruction, which parroted the statute and did «oí require an intent to mislead, the majority have effectively deleted this mental element from the offense. (See Mayfield, supra, 14 Cal.4th at p. 773.)