[No. B127093. Second Dist., Div. Six. Aug. 26, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO LOPEZ, Defendant and Appellant.

**COUNSEL**

Kent Douglas Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Linda C. Johnson and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, Acting P. J.**—Defendant Antonio Lopez was convicted and imprisoned for making terrorist threats. (Pen. Code, § 422.)[1] He had said to his father's girlfriend, among other things, "I'm going to get my friends out here to kill you."

We hold that for purposes of determining whether Lopez is a mentally disordered offender (MDO), his conviction of section 422 involved a threat of immediate force or violence likely to produce substantial physical harm, as required by section 2962, subdivision (e)(2)(Q).

Lopez appeals a judgment committing him to the California Department of Mental Health after a jury determined him to be an MDO. We affirm.

### FACTS

According to a probation officer's report, in 1995 Lopez threatened his father's girlfriend, Betty, during a family argument. Lopez stated that he wanted to get a gun to shoot her "between the eyes" and that he had friends on parole who could kill her. Doctor Silva-Palacios recounted Lopez's threat, as set forth in an undescribed document: "My father should have put the gun between your eyes and blown your head off. You're a snitch. I'm going to get my friends out here to kill you."

The threats frightened and intimidated Betty. She left Lopez's presence and summoned police officers. Lopez physically resisted arrest and was subdued by the officers. He had been using methamphetamine for "about a week" when he threatened Betty.

On May 3, 1995, Lopez pleaded guilty to making a terrorist threat. (§ 422.) The Riverside County Superior Court sentenced him to a prison term of one year and four months.

On August 28, 1998, the Board of Prison Terms determined that Lopez was an MDO pursuant to the criteria of section 2962. As a parole condition, he was required to accept treatment from the Department of Mental Health. Lopez requested a jury trial to contest the MDO determination. (§ 2966, subd. (b).)[2]

At trial Doctor David Finnell, a psychiatrist at Atascadero State Hospital, testified that he interviewed Lopez and reviewed his prison, medical, and

---

[1] All undesignated statutory references are to the Penal Code.

[2] The handwritten petition demanding appointment of counsel and a hearing contains factual errors concerning the underlying conviction. Lopez may request the trial court to permit

psychiatric records. Finnell opined that Lopez is a paranoid schizophrenic who suffers from auditory and command hallucinations, ideas of reference (the television spoke about him), and internal preoccupation. Lopez informed Finnell that voices commanded him to kill or maim himself. He also admitted to abuse of drugs, including cocaine, methamphetamine, PCP, and LSD. Finnell opined that Lopez met the MDO criteria of section 2962.

Doctor Victor Silva-Palacios, a clinical psychologist at Atascadero State Hospital, had treated Lopez for three months. Silva-Palacios opined that Lopez suffers from paranoid schizophrenia, an illness characterized by suspiciousness, hallucinations, confused thinking, poor impulse control, and lack of insight. Lopez admitted to Silva-Palacios that he had mutilated himself on 11 occasions. Lopez was also involved in threats to or assaults upon correctional officers. Silva-Palacios opined that Lopez met the criteria of section 2962, relying upon his assaultive behavior while confined, substance abuse, failure to take antipsychotic medication when released from confinement, and the nature of his mental illness. Silva-Palacios also considered Lopez's recent parole violation, which involved masturbating in front of a grammar school, in forming his opinion.

Doctor Jeffrey Moreno, a psychologist in private practice, interviewed Lopez and reviewed his prison, medical, and psychiatric records several weeks before the Board of Prison Terms hearing and determination. Moreno opined that Lopez is a paranoid schizophrenic who suffers from command hallucinations, delusions, suicide ideation, and poor impulse control. Moreno believed that Lopez presents a substantial danger of physical harm to others because of his criminal history, assaultive and threatening behavior in prison, substance abuse, and lack of impulse control. Moreno opined that Lopez meets the criteria of section 2962.

Lopez testified and admitted that he suffers from a mental disorder, characterized by hallucinations. He stated: "Sometimes the voices tell me to hurt other people, but I never did hurt anyone." In response to the prosecutor's question, "Is that all you told [Betty], that you were going to shoot her?," Lopez stated: "That's exactly what I told her."

The jury found that Lopez was an MDO pursuant to section 2962. It necessarily found that the circumstances of his committing offense involved use of "force or violence" pursuant to section 2962, subdivision (e)(2)(P). The trial court committed Lopez to the Department of Mental Health for treatment.

---

amendment of the petition if he is concerned the erroneous information will appear in future proceedings.

Subsequent to the trial and during the appeal in this case, the Legislature amended section 2962 to add subdivision (e)(2)(Q). That subdivision provides that a committing offense includes a crime "in which the perpetrator expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm in such a manner that a reasonable person would believe and expect that the force or violence would be used." (*Ibid.*)[3]

On appeal Lopez contends the committing offense does not involve a threatened use of immediate force or violence likely to produce substantial physical harm.

## DISCUSSION

Lopez argues that section 2962, subdivision (e)(2)(Q), requires a threat of *immediate* force or violence and not a threat of future violence, which is protected by the First Amendment. (*Brandenburg* v. *Ohio* (1969) 395 U.S. 444, 448-449 [89 S.Ct. 1827, 1830-1831, 23 L.Ed.2d 430, 434] [advocacy of force or violence must be directed to inciting or producing immediate lawless action].) He claims that his threats were protected by federal and state constitutional guaranties of free speech. Lopez points out that subdivision (e)(2) includes specified committing offenses that involve a fear of "immediate and unlawful bodily injury" on the victim or another person. (§ 2962, subd. (e)(2)(G) [sodomy], (H) [oral copulation], (K) [penetration by a foreign object].)

Lopez asserts his threat to Betty concerned only future violence—"My father should have put the gun between your eyes and blown your head off." He also threatened to solicit friends to kill her. These threats, he claims, do not reasonably imply imminent danger of substantial physical harm to a reasonable person and were intended only to frighten the victim.

The terrorist threat statute requires a threat to be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat." (§ 422.) The statute does not require an immediate ability to carry out the threat. (*In re David L.* (1991) 234 Cal.App.3d 1655, 1660 [286 Cal.Rptr. 398].) Section 422 is constitutional. (*People* v. *Fisher* (1993) 12 Cal.App.4th 1556, 1559-1560 [15 Cal.Rptr.2d 889].) It does not reach "a substantial amount of constitutionally protected conduct." (*In re David L., supra,* 234

[3]Lopez apparently concedes the application of section 2962, subdivision (e)(2)(Q) to his appeal. At his request, we have taken judicial notice of documents concerning the legislative history of the recent amendment to section 2962.

Cal.App.3d 1655, 1661.) A threat that the speaker does not intend to implement is not speech protected by the First Amendment. (*People* v. *Fisher, supra*, 12 Cal.App.4th 1556, 1559-1660.)

██ The immediacy element of Lopez's threat was adjudicated by his 1995 guilty plea and conviction. Immediacy is a necessary element of section 422, which requires an "immediate" threat that conveys "an immediate prospect of execution of the threat." (§ 422, 1st par.) A guilty plea admits every element of the charged offense and is a conclusive admission of guilt. (*People* v. *Westbrook* (1996) 43 Cal.App.4th 220, 223 [51 Cal.Rptr.2d 1]; *People* v. *Gonzalez* (1993) 13 Cal.App.4th 707, 713 [16 Cal.Rptr.2d 635].) Lopez may not now relitigate the sufficiency of evidence to establish this element of the offense. (*People* v. *Gonzalez, supra*, 13 Cal.App.4th 707, 713.)

Moreover, sufficient evidence supports the finding that Lopez expressly threatened Betty with an immediate threat of force or violence likely to produce substantial risk of physical harm. (§ 2962, subd. (e)(2)(Q).) Although Lopez refers to a threat quoted by Doctor Silva-Palacios, Doctor Finnell testified the threat was that Lopez "wanted to go get a gun so he could shoot" Betty. Significantly, in response to the prosecutor's question, "Is that all you told [Betty], that you were going to shoot her?," Lopez confirmed: "That's exactly what I told her." A reasonable person would believe that Lopez, a paranoid schizophrenic with a history of assaultive behavior who had used methamphetamine for a week, would use force or violence against the victim. (*People* v. *Mendoza* (1997) 59 Cal.App.4th 1333, 1340-1341 [69 Cal.Rptr.2d 728] [whether threat is unequivocal, unconditional, immediate and specific may depend on surrounding circumstances and the parties' history]; *People* v. *Martinez* (1997) 53 Cal.App.4th 1212, 1222 [62 Cal.Rptr.2d 303].)

The judgment is affirmed.

Yegan, J., and Coffee, J., concurred.