Filed 6/30/14  P. v. Neat CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>THY NEAT,<br><br>  Defendant and Appellant. | D063653<br><br><br>(Super. Ct. No. SCD241995) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.


A jury found Thy Neat guilty of two counts of making a criminal threat. He appeals, contending there was insufficient evidence to establish that (1) he

intended his statement to be understood as a threat, (2) the threat was clear, immediate, unconditional, and specific, and (3) the victims' sustained fear was reasonable under the circumstances. We reject these arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Neat and Khun Soun were neighbors in an apartment complex on Altadena Avenue in San Diego, California. Soun, a 70-year-old woman, and her four daughters came to the United States from Cambodia. Soun did not go to school and was unable to read English and Cambodian. She and Neat spoke together in Cambodian and often had dinner together.

In February 2008, Soun witnessed Neat commit a crime. She reported it to the police. Neat was charged with the crime and Soun testified against him. Soun and her daughter, Lisa Thann, also spoke against Neat at his sentencing hearing. At that hearing, Neat was sentenced to three years in prison.

In September 2011, Soun and her daughter, Pal Thann, moved to a one-bedroom apartment on 48th Street in San Diego to avoid Neat. One morning, Soun's daughter, Savin Soun, drove her to a nearby Asian supermarket where they shopped for about an hour and then returned to Soun's apartment. (For clarity, we refer to Soun's daughters by their first names.) While Soun was putting away the groceries, Savin saw Neat through a window and then at the apartment's metal security screen door. Savin asked if Neat was on parole and told Soun that she

2

thought he was at the door. By that time, Neat had walked away. Soun was scared and called her daughter, Lisa. Lisa reported the incident to the police.

Neat's parole agent, Jose Vizcarra, confirmed that Neat had been released on parole in September 2010. Data from the GPS tracking device on Neat indicated that he was at the Asian supermarket around the same time as Soun and Savin and later at Soun's apartment. This was a violation of Neat's parole condition to have no contact with Soun and her family. Thus, Neat was arrested for a parole violation.

After Neat was arrested, he called Vizcarra and explained that he went to Soun's apartment to inquire about renting a room. Neat claimed that he knocked on the door and left because nobody answered. Soun had never advertised a room for rent or told anyone that she was looking for a roommate.

In October 2011, Neat's parole was revoked and he was ordered to serve 10 months in prison. Shortly thereafter, Soun received a letter at her apartment from Neat. The letter was addressed to Soun and Lisa. Neat's name and CDC number were listed on the envelope.

Soun asked her neighbor to read the letter for her because he could read and speak Cambodian. The neighbor told Soun the letter expressed Neat's threat to kill Soun and her family when he was released from prison. The letter stated that Neat had a gun hidden at an apartment and that he was going to shoot Soun in her mouth.

3

After Soun heard the contents of the letter, she feared for her life and believed there was an immediate prospect that Neat would carry out his threats. Soun called Lisa and told her the contents of the letter. At some point after receiving the letter, Lisa called Vizcarra who told her to call the police to report it. Vizcarra also informed Lisa that Neat would be in custody for the next 10 months.

Lisa's husband took the letter to a local doughnut shop and had a woman there who could read Cambodian translate it. When Lisa heard the translation, she was frightened and concerned for her safety and her family's safety.

At some point, Soun called Officer Pematokyryrasmey Chhun of the San Diego Police Department regarding the letter. A few weeks later, Chhun went to Soun's house and read the letter to her. Officer Chhun translated the letter, which read:

> "Hello, an beat-up and damned dead grandmother with a bullet from the distant shot into your (sic) beat-up and damned dead grandmother's mouth and you beat-up and damned dead grandmother's entire family when after I get released back home and for sure I will not let you beat-up and damned dead grandmother and your entire dynasty alive because you are such a nasty devil, lying and cheating on earth and this time wherever you beat-up and damned dead grandmother go, I will hunt you down to pay retaliation you beat-up and damned dead grandmother till I get you successfully. I have a gun at 4324 41st Street apartment (sic) #4 San Diego, CA 92115. From me, Lon Oun. CDC G41822."

Officer Chunn explained that older individuals are generally referred to as "grandmother" or "grandfather" in the Cambodian culture. He also stated that the

4

term "dynasty" refers to all individuals in a family, even before they are born and after they die.

In March 2012, Vizcarra and Detective Mark Gain spoke to Neat in prison. The conversation was recorded and played for the jury. During that conversation, Neat admitted that he wrote the letter. He claimed that he wrote the letter because he was angry about being sent back to prison, but he did not own a gun and did not intend to carry out his threat. Vizcarra explained that Soun and her family believed Neat would follow through with his threats, to which Neat replied, "Yeah, they think about it." When Vizcarra told Neat that Soun and her family were very scared, Neat responded, "Uh-huh. I let-they scared about it. But it not right not true." Neat also explained that the address where he claimed to have a gun was not real.

## DISCUSSION

### I. *Standard of Review and General Legal Principles*

"When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We '"'presume in support of the judgment the existence of every fact the trier could reasonably

5

deduce from the evidence.'"'"  (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

"'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]' [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

To prove a defendant made a criminal threat in violation of Penal Code section 422, subdivision (a), "the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'— was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances."

6

(*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)  We look to all the surrounding circumstances to determine if there was substantial evidence to prove the elements of making a criminal threat.  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 814.)

## II.  *Sufficiency of the Evidence*

A.  Intent

Neat contends there was insufficient evidence to support the intent element of making a criminal threat because his words were an angry rant rather than a real threat.  Specifically, he claims his references to "damned dead grandmother" and "not let . . . her entire dynasty alive" reveal that he was merely cursing at Soun and did not intend for his words to be taken seriously.  We reject this argument.

"[Penal Code] [s]ection 422 was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others.  [Citation.]  'One may, in private, curse one's enemies, pummel pillows, and shout revenge for real or imagined wrongs—safe from section 422 sanction.'  [Citation.]"  (*People v. Felix* (2001) 92 Cal.App.4th 905, 913.)  What is criminalized by Penal Code section 422 is the attempt to instill fear in others.  (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 861.)

Here, the jury could reasonably conclude that Neat's letter was a criminal threat, rather than merely an angry rant.  The evidence established that Neat intended his letter to be understood as a threat by Soun and Lisa.  By addressing the letter to Soun and Lisa, mailing it to Soun's address, and identifying himself as

7

the sender, Neat took steps to ensure that his threat would be conveyed. Further, the letter was more than an angry outburst because Neat falsely stated in the letter that he owned a gun and fabricated an address where he claimed that gun was hidden. These details were clearly intended to instill fear in Soun and Lisa. Lastly, when Vizcarra explained to Neat that Soun and her family believed Neat would follow through with his threats and were scared, Neat replied, "Yeah, they think about it" and "I let-they scared about it." Thus, Neat was aware that Soun and Lisa would be scared and believe the statements in the letter were true.

Based on the foregoing, there was substantial evidence to establish Neat intended his letter to be taken as a threat.

B. Clear, Immediate, Unconditional, and Specific

Neat argues there was insufficient evidence to establish that his statements were so clear, immediate, unconditional and specific as to convey to Soun and Lisa a real threat and an immediate prospect of execution of the threat. Specifically, he claims the threat was not immediate because he was in custody at the time he sent the letter and he did not specify a particular date to carry out the threat. Neat also claims testimony from Lisa's husband that he did not immediately tell Soun what the letter said because she was "high strung" supports an inference that the threat was not unequivocal, immediate, specific, or clear. We are not persuaded.

To satisfy the gravity of purpose element, the communication need not be absolutely unequivocal, unconditional, immediate and specific. The test is

8

whether in light of the surrounding circumstances, e.g., the prior relationship of the parties and the manner in which the statement was made, the communication was sufficiently unequivocal, unconditional, immediate and specific as to convey to the victim a gravity of purpose and immediate prospect of execution. (*People v. Bolin* (1998) 18 Cal.4th 297, 340; *In re Ryan D.*, *supra*, 100 Cal.App.4th at pp. 860-861.) Penal Code section 422 does not require an immediate ability to carry out the threat. (*People v. Lopez* (1999) 74 Cal.App.4th 675, 679.) "'A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does "not communicate a time or precise manner of execution, [Penal Code] section 422 does not require those details to be expressed." [Citation.]'" (*People v. Wilson*, *supra*, 186 Cal.App.4th at pp. 806, 815 [finding sufficient evidence supported conviction where prisoner threatened to kill officer when released from custody in 10 months].)

Here, Neat's letter and the surrounding circumstances conveyed a gravity of purpose and immediate prospect of execution. It is of no consequence that Neat was in custody when he sent the threatening letter because he specifically conveyed his intent to carry out his threats "after [he was] released back home." Vizcarra informed Lisa that Neat would be released in 10 months. Thus, Neat's threat caused Soun and Lisa to be in sustained fear for their lives, even causing Soun to move from her apartment and stop shopping at the supermarket where Neat found her. A specific date was not required in the letter, especially where Neat specified he would carry out his threat when he was released and the victims

9

were aware that date was looming. (See *People v. Wilson*, *supra*, 186 Cal.App.4th at p. 806.)

Further, Neat's history with Soun suggests that his threats were imminent. After seeing Soun at a supermarket, Neat violated his parole by showing up at her apartment door. A short time later, Neat sent his letter to that apartment address. Thus, the letter and surrounding circumstances conveyed a gravity of purpose and immediacy of execution.

Lastly, we are not persuaded by Neat's reliance on the testimony from Lisa's husband that Soun was "high strung" and he did not convey the meaning of the letter to her immediately. That testimony in no way suggests that the threat was not unequivocal, immediate, specific, or clear. To the contrary, given Neat's history, it was reasonable for Soun to be scared and for her family to be concerned about her because the letter was specific and graphic. Neat detailed that he had a gun hidden at an apartment and would retaliate against Soun by hunting her down and shooting her in the mouth.

In sum, we conclude there was ample evidence in the record to establish that the threat was clear, immediate, unconditional, and specific.

C. Reasonableness of Fear

Neat contends there was insufficient evidence to establish that Soun and Lisa's fear was reasonable. He claims their fear was not reasonable because they knew he was in custody, his letter was merely an angry rant, and Lisa's husband described Soun as "high strung." We disagree.

10

Whether a person could fear the execution of a threat "can be based on all the surrounding circumstances and not just on the words alone." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.) One of those circumstances is the parties' history. (*Ibid*; see also *People v. Garrett* (1994) 30 Cal.App.4th 962, 965 [victim fearful because of defendant's violent history].)

Here, Soun witnessed Neat commit a crime, reported him to the police, and testified against him in that case. Soun and Lisa both spoke at Neat's sentencing hearing. Neat was sentenced to three years in prison. While on parole, Neat saw Soun in a supermarket and then visited her home in direct violation of his parole conditions. As a result, Neat's parole was revoked and he was returned to prison for 10 months. Shortly thereafter, Neat sent his threatening letter to Soun and Lisa in which he made it clear that he was seeking revenge and wanted to hurt them. As we already stated, Neat's letter was more than an angry outburst as it intentionally conveyed a criminal threat. (*Ante*, part II.A.) The evidence in this case shows that Neat's improper behavior was escalating.

The fact that Soun and Lisa knew Neat was in custody does not make their fear unreasonable. Although Penal Code section 422 requires an immediate prospect of execution, it "does not require an immediate ability to carry out the threat." (*People v. Lopez*, *supra*, 74 Cal.App.4th at p. 679; *In re David L.* (1991) 234 Cal.App.3d 1655, 1660; see *People v. Melhaldo* (1998) 60 Cal.App.4th 1529, 1538 [the focus is the *future prospect* of the threat being carried out].) For example, in *People v. Franz* (2001) 88 Cal.App.4th 1426, 1449, the court held the

victims' fear was reasonable even though a police officer was on the scene when the defendant made the threat because the victims "did not know when they would next see defendant." In this case, Neat found Soun once while he was on parole. Thus, Soun and Lisa reasonably feared that he would find them again when he was released in 10 months. Additionally, whether or not Soun was "high strung," her fear was reasonable given the totality of the circumstances and Neat's escalating behavior.

Based on the foregoing, we conclude there was sufficient evidence to conclude the victims' sustained fear was reasonable under the circumstances.

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

12