Filed 5/5/15  P. v. Walker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075058 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F01252) |
| v. | |
| NAJEE WALKER, | |
| Defendant and Appellant. | |

A jury found defendant Najee Walker guilty of making a criminal threat (Pen. Code, § 422)[1] against K.C., a community college instructor.  The trial court imposed a state prison sentence of seven years eight months.  On appeal, defendant contends his conviction violates his right to freedom of speech under the First Amendment to the United States Constitution.  Specifically, he argues that his conduct was not "so unequivocal, unconditional, immediate, and specific as to convey to the person

---

[1]  Undesignated statutory references are to the Penal Code at the time of defendant's crimes.

1

threatened, a gravity of purpose and immediate prospect of execution." (§ 422.) Having performed an independent review of the facts presented in this case, we find defendant's contention without merit. We affirm.

## FACTUAL BACKGROUND

In February of 2013, K.C. was teaching anatomy and physiology at Twin Rivers Community College (Twin Rivers). Defendant's wife, R.W., was a student in K.C.'s class.

On the morning of February 8, 2013, defendant and R.W. got into an argument over who would have use of their car on that morning. Before the argument was resolved to defendant's satisfaction, R.W. drove the car to Twin Rivers where she went to K.C.'s classroom and began studying for the day's quiz. After R.W. left with the car, defendant became more upset and decided to follow R.W. to her school.

Just before 8:30 a.m., one of R.W.'s classmates informed her that defendant was standing in the back of the classroom. Defendant walked up to R.W.'s desk and told her to "step outside." R.W. refused and ignored him for several minutes. Defendant became agitated and, standing less than a foot from R.W., said something to the effect of, "Bitch, I know you heard me," or "Bitch, I'm not going to ask you again. Step outside." R.W. remained seated at her desk and continued to ignore him. When she asked defendant to leave, he refused. Finally, R.W. walked to the front of the classroom and requested that K.C. ask defendant to leave.

While working at her desk at the front of the classroom, K.C. had noticed defendant, a man she did not recognize, bent over R.W.'s desk talking to R.W. A few moments after R.W. asked for help getting defendant to leave, K.C. walked over, tapped defendant on the shoulder and said, "Excuse me. You need to leave." Defendant became "very angry." He "got in [K.C.'s] face" and yelled at her, calling her a "fucking bitch" and telling her "it was none of [her] [fuck]ing business and that he would have [her]

2

taken care of."[2] K.C. was "very upset" and afraid she "could get shot [or] stabbed." She went immediately to the school's administration office and asked them to call the police to have defendant removed from the premises. When she returned to the classroom, she was accompanied by a school administrator. By the time she returned, however, defendant had left the classroom through the back door. K.C. attempted to resume class but had difficulty doing so because her students were "pretty upset" and talking about the incident.

Students D.V., C.H., and A.V. later testified they heard defendant yelling and cursing at R.W. C.H. recalled that defendant was "angry" and "frustrated" and "having a very threatening manner." He was worried the argument was about to get physical. A.V. heard defendant tell K.C. that if she wanted him to leave she would need to "make him" and he was going to "F her up." She started looking for a place to "duck and hide" in case it was "gonna escalate."

Shortly thereafter, Twin Rivers Police Detective Arnel Agdipa and other officers arrived at the school. Detective Agdipa initially spoke with R.W. for a few minutes, and then obtained a detailed statement from her approximately 45 minutes later. R.W. told the detective that, when she refused defendant's instruction to step outside, defendant said, "Bitch, I will beat your ass. I will slap the shit out of you, Bitch. You know you have to come home sometime, Bitch."[3] R.W. also said she was afraid of defendant and wanted to file a restraining order against him. After taking R.W.'s statement, Detective Agdipa attempted to find defendant, to no avail.

When class ended at 3:30 p.m. that afternoon, R.W. walked to the nearby Twin Rivers Police Department and obtained a temporary restraining order against defendant.

---

[2] K.C. testified defendant was just "inches" away from her face.

[3] At trial, R.W. denied having said these things to Detective Agdipa.

Detective Agdipa interviewed K.C. several days after the incident.

PROCEDURAL HISTORY

Defendant was charged by amended information with two counts of threatening to commit a crime which will result in death or great bodily injury with the intent that the statement be taken as a threat (§ 422—counts one (as to R.W.) and two (as to K.C.)), and attempting to cause K.C., a public employee, to refrain from performing her duty by means of a direct threat to inflict injury (§ 71—count three). The amended information alleged defendant suffered a prior serious or violent felony conviction, a strike (§§ 667, subds. (b) through (i); 1170.12), and a prior serious felony conviction (§ 667, subd. (a)), and had served a prior prison term (§ 667.5, subd. (b)).

A jury found defendant guilty of count two, the criminal threat against K.C., and not guilty of the remaining counts. The trial court denied defendant's motions to reduce count two to a misdemeanor (§ 17, subd. (b)) and to strike the prior strike conviction (§ 1385) and, in a bifurcated proceeding, found all special allegations true. The court sentenced defendant to an aggregate term of seven years eight months in state prison.

Defendant filed a timely notice of appeal.

DISCUSSION

As his sole contention on appeal, defendant contends his threat to K.C. did not convey the "gravity of purpose" necessary to prove a criminal threat (§ 422), and his conviction violated his right to free speech as guaranteed by the First Amendment to the United States Constitution. We disagree.

*A. The First Amendment*

The First Amendment is not offended when a state bans a "true threat." (*People v. Chandler* (2014) 60 Cal.4th 508, 519, quoting *Virginia v. Black* (2003) 538 U.S. 343, 359 [155 L.Ed.2d 535, 551].) " ' "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. [Citations.] The

4

speaker need not actually intend to carry out the threat.  Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur."  [Citation.]  Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.' " (*Chandler,* at p. 519.)  "When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection." (*People v. Toledo* (2001) 26 Cal.4th 221, 233.)

   *B.  Section 422*

   California's ban on "criminal threats" is contained within section 422.[4]  Our Supreme Court has clarified that section 422 has five elements that must be established by the prosecution:  (1) the defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person, (2) the defendant made the threat with the specific intent that it would be taken as a threat, even if he did not intend to carry it out, (3) the threat was, on its face and under the surrounding circumstances, so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose

---

[4] Section 422 states in pertinent part that "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

5

and immediate prospect of execution, (4) the person threatened was placed in sustained fear for his or her own safety or that of his or her immediate family, and (5) the fear was reasonable under the circumstances. (*People v. Toledo, supra,* 26 Cal.4th at pp. 227-228*; In re Ryan D.* (2002) 100 Cal.App.4th 854, 859-860.) In the present case, defendant challenges only the third element—that, under the circumstances, the threat was not sufficiently unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose.

"[S]ection 422 requires that the communication must be sufficient 'on its face and under the circumstances in which it is made' to constitute a criminal threat. This means that the communication and the surrounding circumstances are to be considered together. 'Thus, it is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' " (*In re Ryan D., supra,* 100 Cal. App. 4th at p. 860.) "To constitute a criminal threat, a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific. The statute includes the qualifier 'so' unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution." (*Id.* at p. 861.) The word "immediate" has been interpreted to mean "that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538; see also *People v. Wilson* (2010) 186 Cal.App.4th 789, 807.)

*C. Independent Review*

In order to make sure that a conviction for making a criminal threat does not improperly intrude on protected speech, "a reviewing court should make an independent examination of the record in a section 422 case when a defendant raises a plausible First

6

Amendment defense to ensure that a speaker's free speech rights have not been infringed by a trier of fact's determination that the communication at issue constitutes a criminal threat." (*In re George T.* (2004) 33 Cal.4th 620, 632.) "Independent review is not the equivalent of de novo review 'in which a reviewing court makes an original appraisal of all the evidence to decide whether or not it believes' the outcome should have been different. [Citation.] Because the trier of fact is in a superior position to observe the demeanor of witnesses, credibility determinations are not subject to independent review, nor are findings of fact that are not relevant to the First Amendment issue. [Citations.] . . . [U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law." (*Id.* at p. 634.)

### D. Analysis of Defendant's Claims.

Defendant's statements, considered in light of the surrounding circumstances, were sufficiently unequivocal, unconditional, immediate, and specific to convey the necessary gravity of purpose required under section 422.

Defendant was upset with R.W. for taking their car to school. He followed her to school and entered the classroom to confront her. Once inside, he became frustrated and angry during his exchange with R.W. According to one of R.W.'s classmates, his manner was threatening and he appeared angry and frustrated. The student was worried there was about to be physical violence. Another student said she started looking for a place to "duck and hide" in the event the argument escalated.

Defendant grew further irritated when K.C. "interfered" in something he felt was just between him and his wife. He testified that he "was getting more madder and more madder" because R.W. would not leave the classroom and instead chose to get K.C. involved. When K.C. asked him to leave, he got within inches of her face, called her a "fucking bitch," told her "it was none of [her] [fuck]ing business," and said he "would have [her] taken care of." The threat to have someone "taken care of" is fairly construed as a threat to assault the victim and cause great bodily injury or even death. Indeed, the

7

threat suggests the victim should be afraid not only of defendant but, potentially, additional conspirators the defendant may enlist. When considered, as it must be, as part of the surrounding circumstances, defendant's statement that he would have K.C. "taken care of" was reasonably interpreted by the victim as conveying a "gravity of purpose" that she was in danger of great bodily injury or death.

Relying almost exclusively on *In re Ricky T.* (2001) 87 Cal.App.4th 1132 (*Ricky T.*), defendant argues the facts do not support a finding that his "emotional outburst" conveyed the necessary gravity of purpose criminalized by section 422. In *Ricky T.*, a minor student left his high school classroom to use the restroom, returned to find the classroom door locked, pounded on the door and was accidentally hit on the head when the teacher opened the door. The minor got angry, cursed, and told the teacher, " 'I'm going to get you.' " (*Id.* at p. 1135.) The court of appeal found there was no evidence of any prior history or disagreement or hostility between the minor and his teacher, and the lack of any conduct by the minor to "further the act of aggression," such as pushing or shoving the teacher, was significant because the threat was vague and not immediate. (*Id.* at p. 1138.) The court also found significant the fact that there was no indication the teacher felt anything more than momentary fear, and that the police were not called until the following day. (*Id.* at pp. 1138-1140.) The appellate court characterized the minor's threat as "an emotional response to an accident rather than a death threat that induced sustained fear," and concluded the minor's threat to "get" his teacher after an imagined slight was not a violation of section 422. (*Id.* at p. 1141; see also *id.* at pp. 1138-1141.)

The differences between *Ricky T.* and this case are significant. In *Ricky T.*, the minor simply reacted to the sudden impact of being accidentally hit in the head by the door to his classroom. There was no separate dispute that preceded the student's emotional outburst. Here, defendant was already involved in an emotional dispute with his wife when K.C. politely asked him to leave. Defendant responded by acting in a

8

threatening manner, yelling and cursing at K.C., and telling her he would have her "taken care of." Unlike *Ricky T.*, where the minor *figuratively* got " 'in [the teacher's] face,' "[5] (*Ricky T., supra,* 87 Cal.App.4th at p. 1135), defendant *literally* got within inches of K.C.'s face, conveying real aggression. Rather than confront defendant, K.C. immediately left the classroom, went directly to the school's administration office, and requested that someone call the police. She testified she did so because she was afraid of "how angry . . . [defendant] was" and feared she could be stabbed or shot. When she returned to the classroom, after seeking police assistance, she was accompanied by a school administrator. And, unlike the teacher's fleeting fear in *Ricky T.*, K.C. was "real shook up" and was even "a little bit" afraid to walk to the parking lot. All of this evidence demonstrates defendant successfully conveyed a gravity of purpose and an immediate prospect of execution of the threat.

It is also significant that in *Ricky T.*, the threat was uttered by a 16-year-old minor to his teacher. (*Ricky T., supra,* 87 Cal.App.4th at p. 1135.) In contrast, the threat at issue in this case was communicated by a 23-year-old adult who was neither a student at Twin Rivers nor known by his victim. Defendant was present in K.C.'s classroom solely because he was engaged in a dispute with his wife over who would use their car. Unlike the teacher's pre-existing relationship with his student in *Ricky T.*, the ability of K.C. to assess whether the angry man in her classroom would carry out his threat was limited to what she had just observed.

We reject defendant's claim that the absence of any physical show of force (e.g., displaying of fists, battering K.C. or someone else, or damaging property) or any attempt to prevent K.C. from leaving the classroom demonstrates he did not convey a gravity of purpose. Defendant further argues that the fact that the police were focused on his

---

[5] There is nothing in *Ricky T.* to suggest this statement was more than a figure of speech or that the minor actually breached the teacher's personal space.

interaction with R.W., and were "unconcerned with [his] behavior and words toward [K.C.]," demonstrates that his actions lacked a gravity of purpose as to K.C. We are not persuaded. The existence of a criminal threat is not fairly determined by the initial focus of the police response, if any. Regardless, the police response in this case was swift and focused on defendant. Officers arrived at Twin Rivers shortly after the incident. Detective Agdipa spoke with defendant's wife, R.W., who gave him sufficient information to recognize the gravity of the situation, and prompted him to commence a search for defendant. The detective's decision to look for defendant before obtaining additional information from K.C. does not support defendant's claim that his statements fall below the level of criminality.

Finally, defendant contends nothing about the surrounding circumstances indicated he would "immediately" commit a crime against K.C. resulting in serious bodily injury or death. But section 422 "does not require an immediate ability to carry out the threat" (*People v. Lopez* (1999) 74 Cal.App.4th 675, 679), nor does it require the threat to " ' "communicate a time or precise manner of execution." ' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 806, quoting *People v. Butler* (2000) 85 Cal.App.4th 745, 752.) The term "immediate" signifies "that degree of seriousness and imminence which is understood by the victim to be attached to the future prospect of the threat being carried out, should the conditions not be met." (*People v. Melhado, supra,* 60 Cal.App.4th at p. 1538, italics omitted.) K.C. testified she was afraid she might get stabbed or shot, and was afraid to walk to the parking lot.

When viewed with the surrounding circumstances, the threat defendant made to K.C. was sufficient to convey a gravity of purpose and an immediate prospect of execution of the threat. We conclude the statement is not protected speech and defendant's claim is without merit.

DISPOSITION

The judgment is affirmed.

                                                                                   RENNER               , J.

We concur:

    RAYE                   , P. J.

    BLEASE              , J.