Filed 12/11/15  P. v. Moreau CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KEVIN MICHAEL MOREAU,<br><br>Defendant and Appellant. | F069404<br><br>(Super. Ct. No. RF6496A)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Michael J. Pinkerton, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Kane, J. and Poochigian, J.

## INTRODUCTION

Appellant Kevin Michael Moreau stands convicted of a violation of Penal Code section 422, criminal threats.[1]  Moreau contends the evidence is insufficient to support the conviction, in that the statement was not unequivocal and immediate.  Moreau also contends the case should be remanded for the trial court to exercise its discretion to reduce the fines and fees imposed based upon excess time in custody, as he was sentenced to a term of 16 months in prison but awarded 788 days of credit, which exceeds the term imposed.  We remand for the trial court to exercise its discretion under section 2900.5 and otherwise affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On September 19, 2012, Kirk Collado was killed in a motorcycle accident in Ridgecrest.  Shortly after the accident, Moreau contacted the Ridgecrest Police Department (the Department) and claimed he was Collado's father.  Moreau sent a letter to the Department, alleging Collado had been murdered and that another son, Joshua, had something to do with the murder.  Police Chief Ronald Strand responded to Moreau's letter, stating that there was no evidence of foul play, but that the matter had been forwarded to the district attorney's office for review.

Moreau spoke with Sergeant Justin Dampier by telephone on several occasions and came into the police station on two occasions in search of records.  Dampier was the records supervisor at the time and Moreau was seeking records and information Dampier thought the Department could not release to him.  When Moreau was in the police station, he was extremely agitated, raised his voice, and became increasingly upset when Dampier indicated he could not provide all the documents Moreau was requesting.  In some of the telephone calls, Moreau was requesting property be turned over to him that he thought belonged to him.

---

[1]    References to code sections are to the Penal Code unless otherwise specified.

2.

After Moreau was unable to obtain the documents and property to which he felt entitled, he threatened to sue the Department and "get other people involved" in order to get what he wanted. Moreau then contacted Sergeant Ryan Marrone by telephone to discuss the manner in which the Department was handling the investigation of Collado's death; Moreau thought there was "some sort of a coverup."

After these visits and telephone calls from Moreau, Strand ordered that only supervisory personnel deal with Moreau, as he was "a safety concern."

Ultimately, Moreau was provided with the documents he requested about three to six months after his requests.

Lori Blowers was Strand's administrative secretary. As part of her duties, she took incoming calls for Strand and checked his voicemail messages. On December 19, 2012, Blowers checked Strand's voicemail messages and heard a message that "concerned" her. She immediately called Strand to alert him to the message and then had Marrone come and listen to the message. The voicemail message was played at trial and stated:

> "'Yeah, this message is for Chief Strand. This is Mr. Kevin Michael Moreau, and I wanted to tell him—oh, let me sing it for you, I know who I am, I know who I am, and if you mother fuckers think you killed Jesus on Church Street, no, he's still living, and you're gonna wish you were dealing with someone who would turn the other cheek, all right? I'm going to come up there and visit you guys. I won't be able to do that before Christmas, but I will be coming up there to visit you guys, and you know what, I was entertaining the same—um—same thing that guy in Connecticut, [Newtown], Connecticut, did, okay? So you guys have a merry Christmas and a happy New Year, and my phone number, is …, once again…, and have some of your clansmen call me, all right?'"

Strand listened to the message with Blowers and Marrone present. Strand was aware Moreau was upset about the collision causing Collado's death; that he thought there might be a "coverup" and that another son, Joshua, or a third party may have been involved in Collado's death. Strand knew that Moreau disagreed with the Department's

3.

handling of the investigation of the accident involving Collado. Moreau had been "escalating in some of his anger issues" and was "not taking no for an answer." Moreau's "behavior was becoming more and more bizarre and out of the ordinary," but he had made no specific threats until the voicemail message.

Strand testified that when he heard the message, he was "very concerned" about his own personal safety and the safety of his officers and staff. Strand took the threat seriously. Based on the voicemail message, an immediate investigation was initiated. Pictures of Moreau were posted throughout the station and an arrest warrant was issued. Strand also took steps to have the Department's building made more secure.

On December 19, 2012, Moreau was arrested in Los Angeles. Moreau was belligerent at the time of his arrest. On December 20, 2012, Officer Ryan Sloan of the Department transported Moreau from Los Angeles to Ridgecrest. On the drive, Moreau made numerous statements, including: (1) "his son had been murdered and that the … Department hadn't done anything about it"; (2) "he was gonna show us how a real man commits murder"; (3) "he was going to obtain a gun and shoot people"; (4) he planned to "kill a hundred of us white devils; 27 for his son, 50 for him." Moreau also admitted to "'harassing'" Strand and stated that "he was going to declare war with us, with the … Department."

A complaint charging two violations of section 422 was filed in Kern County on December 21, 2012. On December 27, 2012, defense counsel moved for an order that Moreau be examined to determine his mental competency to stand trial. The order was granted and the trial court appointed a doctor to examine Moreau pursuant to section 1368. On January 31, 2013, based upon the medical examination, the trial court found that Moreau presently was not competent to stand trial or cooperate with his own counsel. Proceedings were suspended and the trial court ordered that Moreau be treated and evaluated pursuant to section 1370. Moreau was committed to Patton State Hospital for treatment. Moreau was being given treatment, including medication, involuntarily.

4.

On December 12, 2013, the trial court found that Moreau had been restored to competency to stand trial and was able to cooperate with counsel; proceedings were reinstated. On December 19, 2013, however, defense counsel again moved for an examination to determine Moreau's competency to stand trial. The trial court ordered that Moreau be examined and appointed two doctors to conduct an examination pursuant to section 1368. On January 9, 2014, the trial court found Moreau competent to stand trial and cooperate with his counsel; proceedings were reinstated.

On January 24, 2014, defense counsel notified the trial court of a conflict and asked to withdraw. The request was granted and new counsel was appointed. The preliminary hearing was held on February 10, 2014, and Moreau was held to answer. On February 18, 2014, an information was filed charging Moreau with one count of violating section 422.

Moreau waived his right to a jury trial. A court trial began on April 15, 2014. On April 16, 2014, the trial court found Moreau guilty as charged.

On May 14, 2014, the trial court denied Moreau's request for probation and sentenced him to a term of 16 months in state prison for the section 422 conviction. The trial court awarded 512 days of actual custody credits and 276 days of conduct credits, for a total of 788 days. The trial court also imposed statutory fines in the minimum amounts.

## DISCUSSION

Moreau contends the evidence is insufficient to support the conviction, in that the threatening statement was not unequivocal and immediate as required by section 422. Moreau also contends the case should be remanded for the trial court to exercise its discretion to reduce the fines imposed based upon excess time in custody, as he was sentenced to a term of 16 months in prison but awarded 788 days of credit, which exceeds the term imposed.

5.

## I. Section 422

Moreau contends the voicemail message was a "vague, rambling statement" about something that "would have taken place at least 5 days after the statement was made." As such, he contends his voicemail message was not immediate and unequivocal. He is mistaken.

Section 422 provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat …." Moreau challenges the sufficiency of the evidence supporting the unequivocal and immediate components of section 422.

To establish a violation of section 422, five elements must be proven: (1) the defendant threatened to unlawfully kill or cause great bodily harm to the victim; (2) the threat was made with the specific intent that the statement be taken as a threat; (3) the threat was so unequivocal, unconditional, immediate and specific as to convey a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the victim to be in sustained fear for his or her safety; and (5) the victim's fear was reasonable under the circumstances. (*In re George T.* (2004) 33 Cal.4th 620, 630.)

Moreau challenges the sufficiency of the evidence supporting the third element, contending the threat was not unequivocal or immediate.[2]

---

[2] The People focus their brief on the issue of whether there was sustained fear; however, Moreau does not challenge this element.

*Standard of Review*

In addressing the sufficiency of the evidence supporting a conviction, an appellate court "must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] … '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]"'" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054.)

*Analysis*

Moreau argues that the voicemail message was no more than an angry crank call; section 422 does not apply to "'emotional outbursts'"; and the message therefore lacked the unequivocal aspect required by the statute. In the message, Moreau stated he was "going to come up there and visit you guys" and was entertaining doing what was done in Newtown, Connecticut. Moreau's argument appears to be that he had no intent of carrying out the threat; therefore, it does not violate section 422. Whether he actually intended to carry out the threat is irrelevant to whether the voicemail message violates section 422. (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

The meaning of a threat must be gleaned from all of the surrounding circumstances. (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218.) The parties' history can also be considered as one of the relevant circumstances. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340–1341.) The statute does not concentrate on the precise words of the threat, but whether the threat communicates a gravity of purpose. (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1158.)

7.

Here, Moreau had shown up at the Department on at least two occasions in an extremely agitated and upset state; had made several telephone calls to the Department, complaining about how they were handling a specific case and a "coverup"; and stated he would "get other people involved." Before the voicemail message was received, Strand already had classified Moreau as a "safety concern" and directed that only supervisory personnel deal with Moreau.

Considering Moreau's history with the Department, the language in Moreau's voicemail threat demonstrated an escalation in his interaction with the Department and communicated a gravity of purpose. (*People v. Stanfield, supra,* 32 Cal.App.4th at p. 1158.) Certainly, Moreau's comments after his arrest provided further evidence that he intended the voicemail message as a threat. (*People v. Martinez, supra,* 53 Cal.App.4th at p. 1218.)

The record contains sufficient evidence from which a reasonable trier of fact could find the voicemail message was an unequivocal threat of death or great bodily injury, even if the voicemail message is viewed as an ambiguous statement, as Moreau urges. (*People v. Butler* (2000) 85 Cal.App.4th 745, 753–754.)

As for Moreau's contention that the threat lacked immediacy because it referred to a "hypothetical time weeks later," he is incorrect. For a threat to be immediate, it does not require an immediate ability to carry out the threat. (*People v. Lopez* (1999) 74 Cal.App.4th 675, 679–680.) Nor does the fact that Moreau threatened violence after Christmas, six days away from the date of his voicemail message, obviate the imminent danger. (*Ibid.*) A conviction for violating section 422 may be predicated upon a "'conditional threat contingent on an act highly likely to occur.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 338–340.)

Unequivocality and immediacy must be sufficiently present in the threat and surrounding circumstances to convey a gravity of purpose and immediate prospect of execution to the victim. (*People v. Bolin, supra*, 18 Cal.4th at pp. 339–340.) The trial

court found these elements of section 422 were satisfied and concluded section 422 had been violated. We conclude the evidence supports the trial court's determination. (*People v. Kraft, supra,* 23 Cal.4th at pp. 1053–1054.)

## II. Imposition of Fines

Moreau was sentenced to 16 months in state prison, but was credited with 788 days, which exceeds the sentence imposed. The court ordered Moreau to pay a $240 restitution fine pursuant to section 1202.4, subdivision (b), a suspended $240 restitution fine pursuant to section 1202.45, a $40 security fee pursuant to section 1465.8 and a $30 assessment fee pursuant to Government Code section 70373. Section 2900.5, subdivision (a) specifies a trial court may exercise its discretion to apply excess custody credits to reduce the *fines* otherwise imposed, including base fines. Moreau erroneously characterizes both the fines and fees as "fines" within the meaning of section 2900.5. He then contends the trial court failed to exercise its discretion in this regard, which requires that the matter be remanded.

Nonpunitive fees, such as the security fee authorized under section 1465.8 and the assessment fee authorized under Government Code section 70373, are not fines within the meaning of section 2900.5. Therefore, excess custody credits may not be applied to those fees under section 2900.5. (*People v. Robinson* (2012) 209 Cal.App.4th 401, 406–407.)

When asked to apply the excess credits to the fines and fees, the trial court said:

> "Well, the fines that I've imposed are the absolute minimum fines. And so, therefore, I can't convert those to time. The [$]40 and [$]30 need to remain."

While the trial court was correct when it said it could not reduce the $40 and $30 fees by applying the excess time credits, it was not correct that it "can't" apply the excess time credits to the *fines*. Section 2900.5 does confer that discretion. Consequently, we will remand for the trial court to exercise its discretion.

## **DISPOSITION**

The conviction is affirmed.  The matter is remanded for the trial court to exercise its discretion under Penal Code section 2900.5, subdivision (a).