Filed 5/12/16  P. v. Wondafrash CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAGIM WONDAFRASH,<br><br>    Defendant and Appellant. | D068002<br><br><br>(Super. Ct. Nos. SCD255584 &<br>SCD255835) |

APPEAL from a judgment of the Superior Court of San Diego County, Sharon B. Majors-Lewis, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

When defendant and appellant Dagim Wondafrash was arrested for making the

first of two separate criminal threats, police found a pellet gun in his car.  At trial for the two criminal threats, the trial court permitted testimony about the gun.  We find no abuse of discretion in admission of the pellet gun testimony; moreover, in light of the statements Wondafrash made to the victims and his conduct, admission of the evidence was not prejudicial to his defense that in both instances he was in the manic phase of his bipolar condition and did not have any intention of terrorizing his victims.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Bank

On April 16, 2014, Wondafrash went to a bank in the Mira Mesa community of the City of San Diego and attempted to open up a business account.  Although he was somewhat confrontational with the banker who dealt with him, Panchanh Sripolpa, she initially opened the account for him and accepted his initial deposit into the account.  However, after Wondafrash left the bank, Sripolpa discovered that the business entity under which Wondafrash had opened the account had been suspended by the Secretary of State.  In light of that information, Sripolpa closed the account, called Wondafrash and left a voicemail message asking him to call her.

Very shortly after learning that the account had been closed, Wondafrash called the bank and spoke with Sripolpa.  She explained she had closed the account because the business entity had been suspended and advised Wondafrash that he should return to the bank and she would refund his deposit.  Wondafrash responded very angrily to Sripolpa.  In part, he told her she was a "fucking bitch" and, in a vicious tone, which Sripolpa's supervisors heard because she put the call on a speaker, Wondafrash told her, "I'm going

2

to fucking kill you, I'm going to murder you, I'm on my way, I've got a gun."

Sripolpa and her supervisors took Wondafrash's statements seriously; Sripolpa went into the bank's vault and locked it, and her supervisors alerted the bank's security personnel and police and locked the bank's doors. Police arrived at the bank within minutes and were admitted. They spoke with Sripolpa who appeared "visibly upset" and looked "very, very scared."

Shortly after police arrived, Wondafrash sped into the bank's parking lot and aggressively attempted to open the locked front door of the bank; when he could not get in that door, he went to another entrance and was arrested. Police searched his car and found a pellet gun, which resembled a colt handgun, in the door on the driver's side of the car.

Following Wondafrash's arrest, Sripolpa temporarily changed her name and began taking different routes home from work. She also installed security cameras at her home and obtained a restraining order against Wondafrash.

2. Gym

Shortly after his arrest on April 16, 2014, Wondafrash was released on bail. One week later, on April 23, 2014, Wondafrash went to a gym where he apparently believed he had a valid membership. However, his membership had been revoked that morning, and, when he arrived at the gym, a receptionist, Janelle Leon, asked him to wait in the reception area while she contacted the gym manager. Wondafrash ignored Leon's request and walked into the gym. A personal trainer in the gym and a private security guard found Wondafrash and asked him to leave. Wondafrash argued with the trainer and

3

guard for several minutes, challenged the trainer to fight "MMA" style, but ultimately agreed to leave. As he was leaving the gym, Wondafrash shouted obscenities in "English and another language." Wondafrash stopped at the reception desk on his way out, looked Leon "dead in the eyes," and, in a calm voice told her, "I'm going to chop your fucking head off and put it on a pole, I'll be back."

After Wondafrash left the gym, Leon was frightened that he would come back and was afraid to complete her shift; when her shift was over, the trainer walked her to her car. Because Leon feared for he life, she quit her job at the gym and moved out of San Diego County.

3. Trial Court Proceedings

Wondafrash was charged with two counts of making a criminal threat and one count of committing an offense while released on bail. (Pen. Code, §§ 422 & 12022.1, subd. (b).) At trial, Wondafrash offered evidence from a psychiatrist who treated him in August 2014, while he was hospitalized under a 72-hour hold. (See Welf. & Inst. Code, § 5150.) The psychiatrist stated he believed Wondafrash was suffering from bipolar disorder while hospitalized and that, at the time of the earlier April 2014 threats, a person with Wondafrash's history and behaving in a manner similar to Wondafrash was likely in a "manic episode." According to the psychiatrist, in a manic state a person's mind is racing and they cannot not shut down or filter out their thoughts. The jury found Wondafrash guilty of both counts of making a criminal threat, and he admitted that he committed one of the threats while released on bail. The trial court sentenced Wondafrash to a total prison term of four years eight months.

4

DISCUSSION

On appeal, Wondafrash argues the trial court erred in permitting testimony, over his objection, about the pellet gun police found in his car. He argues it was inadmissible under Evidence Code section 352 because it was highly prejudicial and not probative with respect to his intent when he made threats against Sripolpa and Leon. He argues the error was prejudicial because it distracted the jury from his psychiatric defense.

Evidence is inadmissible under Evidence Code section 352 when its prejudicial impact outweighs it probative value. (Evid. Code, § 352; see *People v. Kipp* (2001) 26 Cal.4th 1100.) We review a trial court's rulings on Evidence Code section 352 objections for abuse of discretion. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 950; *People v. Lewis* (2009) 46 Cal.4th 1255, 1286.) As Wondafrash points out, proof of a criminal threat requires evidence (1) that, when the threat was made, " 'the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630; see CALCRIM No. 1300.) It is irrelevant whether the defendant

5

intended or was capable of carrying out the threat. (*People v. Lopez* (1999) 74 Cal.App.4th 675, 680.)

As the trial court noted in denying Wondafrash's motion to exclude the pellet gun evidence, the fact he appeared at the bank shortly after threatening to shoot Sripolpa with a gun in his car and readily available to him certainly supports an inference that, whether or not he intended to harm her, Wondafrash took steps to make sure his statements would be taken seriously. As such, it was relevant to the charges made against him. As the trial court also noted, the fact the gun was not an actual firearm, but only a relatively less lethal pellet gun, diminished its prejudicial impact. Under these circumstances, the trial court did not abuse its discretion in admitting evidence about the pellet gun.

Moreover, given the undisputed testimony about the significant impact Wondafrash's statements and conduct had on Sripolpa and Leon, the impact of admitting the pellet gun evidence, even if it was an abuse of discretion, was limited and in no sense prejudicial. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) With respect to any potential prejudice, we also note Wondafrash's psychiatric defense was not particularly persuasive. It not only depended on a diagnosis made several months after the incidents, but even if the jury accepted the defense contention that Wondafrash was in a manic state when he made the threats, this conclusion did not prevent the jury from finding that even in a manic state, Wondafrash nonetheless intended that both victims take his threats seriously.

DISPOSITION

The judgment of conviction is affirmed.


BENKE, Acting P. J.

WE CONCUR:


NARES, J.


O'ROURKE, J.